22-1062. And everyone's here and we're ready to go. So we will go ahead and call the case and we will start. Mr. Lee, whenever you're ready. Good afternoon. May it please the court. Yongchun Lee, federal defenders for appellant Carlos Figueroa. In May 2023, when Paul Vaca filed this brief, which looks like a real brief in this court, purportedly on behalf of his client, Carlos Figueroa. It is no exaggeration to say that Mr. Figueroa was effectively without counsel. This awful, deceitful filing, a fraud on both on the court and on his client, was so inept that it almost guaranteed that this court would affirm his murder conviction and life sentence. Well, but we didn't. So let's talk about what you're now arguing. That's right. So but for this court's intervention, Your Honor, that's exactly what has happened. And it's a really commendable, but also an exceptional intervention by this court at the last second to rescue Mr. Figueroa from an absent counsel. So the question before this court, yes, is exactly what Your Honor says. Is the brief, is the person who filed this brief, this is what we're considering. The kind of person who would file this kind of brief, what kind of lawyer was he below? Was this merely an outlier or was this but a continuation of a long record of gross ignorance in action and hostility toward his client that amounted to essentially a lawyer who looked like a lawyer but was not acting as a lawyer? How are we to, I mean, you raise a good point, certainly. It's the case that the situation that happened with the initial brief could be indicative of counsel who did not do adequate work at trial, but it might not be. It's entirely possible counsel presented effective representation at trial independent, obviously, of this. And so how are we to, or how is it appropriate, I guess, for us to consider the brief as reflecting on what he did at trial? Okay, so yes, I agree that ultimately we have to look at what he did at trial. So there's no dispute, both the trial and sentencing if you want to separate that out. But nonetheless, I mean, we have to be realistic here, but we can cut up the representation in all these stages of pre-trial, trial, post-trial sentencing appeal. But let's not lose sight of the fact that this is one continuous representation by one attorney on one client in the same case. And our argument is that the big picture has to be, the court has to consider the big picture. It's a holistic analysis of what this lawyer did as a whole. And his work on appeal is certainly at least circumstantial evidence of what he did. We don't need circumstantial evidence. We have the trial record. Let's talk about what is your, because your claim on appeal can't be that the first brief on appeal was really bad. Your claim on appeal must be something about an error that happened in the trial court. That's exactly what we. So let's talk about what the claim is. That's right, let's talk about that. But nonetheless, Your Honor, but a lot of the traditional Sixth Amendment analysis, right, as the government insists on its brief, is about this presumption of, it's a real deference, a real deference to trial counsel and an assumption. The court generally assumes that trial lawyers are competent and that decisions are made for strategic considerations or tactical considerations. And that's because it's really hard to tell whether a lawyer is performing effectively. Because a lawyer, you know, when you, because there's no set rules of how we're supposed to act, right? How we're supposed to behave is governed by broad rules that are applied to specific circumstances. So what the Supreme Court said in Strickland is that because it's so hard to discern, you know, a lawyer's effectiveness, and because it's so easy to claim that your lawyer messed up, we've got to, you know, have this presumption that the lawyer was competent. After all, the lawyer's licensed. You know, he or she is an officer of the court and subject to all sorts of ethical obligations and so on. But in this case, this is part of the relevance of the appellate brief. It would be absurd, I submit, for this court to apply a presumption of competence to Mr. Vakas' performance. Why is that, though? This is what I struggle with. Particularly in this record, some of the areas you pointed to where your client objected during trial, the trial judge said, no, no, you have a very good attorney. Your attorney has done an excellent job. Yes. So faced with that record, how are we to say the presumption is there? Well, let me address your Honor's point about this. This is the trial judge who's watching his performance firsthand. By the way, the same trial judge who will decide if we were to remand or otherwise. Yes, that's right, Your Honor. So, you know, the judge made this comment at sentencing, right, and the government cut it and pasted it in their brief that, oh, Mr. Vakas was a terrific lawyer at sentencing. But let's, okay, I'll take your Honor's direction. Let's look at what Mr. Vakas did at the sentencing for the judge to commend him as an excellent attorney. This is a man facing a 30-to-life sentence. So it's not a life minimum, right? So he could have gotten 30 years. Look at the kind of advocacy that Vakas provided for his client. Did he write a sentencing letter? He did not write a sentencing letter. He submitted a cover letter and attached maybe 10 letters from family and friends. That's all he did. And, in fact, four or five of those letters, about half of them, are in Spanish that he did not translate. And there's certainly no indication that Mr. Vakas speaks Spanish, and there's still no indication that District Judge Garacci speaks Spanish. And then look at his sentencing advocacy at the sentencing proceeding in which the judge commends him for being such an excellent lawyer. Does he offer an argument in mitigation? He says almost nothing. This is at page 364 to 365 of the appendix. All he says, I mean, I can read it to you because it would only take about a minute. Well, we've read the record, but your brief doesn't argue that the sentence imposed was either procedurally or substantively unreasonable. I don't argue that because I was focused on this idea that he was ineffective because he failed to do the ‑‑ Okay, so if we were to disagree with you, if we were to say there's not enough here to find ineffectiveness, because our three choices are we find him ineffective, we remand for additional finding, or we make a yes, maybe, or no. That's right, yes. Okay, so if we said no, that would be the end of Mr. Figueroa's direct appeals. There is no challenge to the sufficiency of the evidence. There is no challenge to the reasonableness of the sentence. Is that right? That's right. So your only argument on behalf of Mr. Figueroa on appeal, a man who got a life, two life sentences plus I think 25 years, and had a trial with a variety of evidentiary disputes, I think there's at least one challenge to the jury instructions in the course of the trial below. I'm not sure, I'm not aware of any challenge. Okay, well, there are no, but Mr. Figueroa brings no substantive challenges to his conviction. The sole challenge on direct appeal is the ineffectiveness of counsel. That's right. Okay. Let me, as a follow up to that question, let me ask, were you, did you read the court's initial order to show cause for the first attorney, Attorney Vaca? Yes. In that order, this court said, this panel, as a result, Mr. Vaca's brief asserts arguments that are largely irrelevant to his client's case, cites to the transcript of the wrong trial, and disturbingly entirely fails to challenge his client's conviction for murder while engaged in a narcotics conspiracy. In your briefing, you don't address that issue. Which issue, the last issue, the murder conviction? Yes. Entirely fails to challenge his client's conviction for murder. So, this panel pointed out that disturbingly, the brief doesn't mention an entire count. But then I look at your brief now, as the substitute lawyer, and you don't address that count. So, I take it you're also not raising any challenges relating to that count. That's incorrect, Your Honor. That's incorrect. Our argument is that all the counts, the whole judgment. No, no, no. Challenging the substance of it. Your only challenge is the whether Attorney Vaca was effective or not. Well, our argument is that all counts should be vacated, including the murder count, and be sent back for retrial. But I guess that's not my question. I'm following up on a question that my colleague, Judge Merriam, asked you. And I guess, to be quite blunt, did the court's order make you sort of pause and say, hmm, perhaps I should look at that count to see whether there's any substantive argument beyond the ineffective assistance with regard to that conviction that I could raise. So, if I may respond to you and to Judge Merriam, it is my job as appellate counsel to look through the record and find the strongest arguments. And that's all I will say, because anything beyond that is confidential. But the second point is this, and this is a very critical point, Your Honor. The Supreme Court has said this. This court has said this. The record itself is problematic in a case of an absent or conflicted counsel. Counsel is responsible for shaping and creating the district court record. So, if a lawyer is ineffective at that stage in being absent, like the sleeping lawyer in this court's case in Tippins, or the hostile lawyer in the Ninth Circuit cases that we've filed, then you just can't really trust the record. And so what we have here is a record that's created by this lawyer who is effectively not functioning as an adversary to the government and who is not interested in his client's case. And so that's the appeal. I can only make an appeal on the record. And so the record itself is problematic. And I'll give you several examples of why this is. So Your Honors can say, well, the co-defendant— I just ask you, though, actually, as you're talking about the record and its inadequacy, I guess that goes to my questions about the appropriate response to this in terms of, one, if the record is deficient, how would we appropriately be able to rule on that on appeal? And then I guess as a follow-up to that, you argue for remand for fact-finding, and it's not clear to me why that would be better than having Mr. Figueroa pursue these claims on collateral review. Okay, so our view is—I'll answer that, and I'll get back to the other point. Okay, so our view is that the record is currently sufficient, so there's new appellate counsel, and the record, as it exists, as deficient as it is, nonetheless is sufficient to support our claim of a Sixth Amendment violation. The court could do additional fact-finding, for instance, to find out maybe there's some other reasons why he had such— Valka has such hostility toward his client. Maybe there was a fee dispute. Maybe there was something else. It doesn't really matter because our claim is that on this record, the lack of—the effect of abandonment and hostility, actual conflict, are shown. Now, if the court disagrees with that, the court always, again, as Judge Merriam points out, there's an A, B, and a C. Okay, so if the court is not inclined to simply find the violation and vacate, the court could remand or remand directly and then see what happens in a district court and then hear it again on an appeal, right? Or it could send it to a 2255. And our argument is that this court has always considered efficiency and equitable and fairness factors in determining which of these two options to take, and that here the equities are all on the side of this court keeping the case, and if it believes that there's additional fact-finding necessary, to remand and then to rehear the case. Isn't there also case law in this circuit that at least when it comes to issues of ineffective assistance and the two prongs of Strickland that we're better off letting that be raised on a collateral review? Yes, that's—you know, yeah, we—I don't dispute that that's the general rule. But what I'm saying is that this case is an exceptional case, both because the egregiousness of the misconduct, the fact that this has gone on—that Mr. Figueroa has been saddled with this lawyer for four years, and also because the really exceptional circumstance that this court has already, in effect, declared Vaca to be incompetent in removing him from this case and referring him to a grievance panel. To be clear, we did not declare Mr. Vaca to be incompetent. We declared exactly what's in our orders, nothing more and nothing less, which was the opening brief in this case was inadequate to an extent that we believed that someone should consider whether that was a grievable instance. But to be clear, this panel has never declared Mr. Vaca personally incompetent, and we've never—we have never commented to date on the quality of the representation before the trial court. Okay, I—that's why I said in effect, Your Honor. I never said that this court— That's your interpretation, I guess. That's right. And I would also just note you opined a moment ago about whether Mr. Vaca and Mr. Figueroa maybe had a fee dispute, but my understanding is Mr. Vaca was CJA appointed. No, Your Honor, so let me correct that. So I made that mistake. I thought he was CJA because in this court's order it made— The district court docket says CJA appointment. So apparently he's not. He was retained. Okay. Okay, so that was—but again, that does not matter under the Sixth Amendment. This is Evitz v. Lucey from 1985 in the Supreme Court. There's dictum and strictum and Kyler also that says for purposes of Sixth Amendment analysis, it does not matter whether counsel is retained or appointed. Okay, but my understanding, and I believe Mr. Marangolo can confirm this, is that Vaca was retained. But then how was he saddled with him, as you just described it? Well, okay, so maybe that's the wrong choice of word, okay? That he's had this lawyer for five years and that the fact that this court has already— Again, Your Honor, you simply didn't simply remove him. You also referred him to the grievance panel, and that to me is exceptional. I've been practicing in this court for over 20 years, and I find that that is an exceptional act to take, and that that exceptional circumstance is not found in any of these other cases in which this court is confronted with the choice of whether to force the defendant to wait until a collateral review to review a claim or to review it now. This court has at least already looked into Vaca's performance and has taken action against him based on that performance. And given that circumstance, which is not found in any other case, we submit that the better course is to remand. But, Judge Marangolo, if I could get back to your original question of this record, okay? And I can give you some examples of why the record— I'll defer to the presider. You're substantially over your time. I will give you one minute to wrap it up. So the fact that the record is deficient, why don't we raise other issues, right? Well, for instance, the co-defendant raised a Fourth Amendment issue, right? What Fourth Amendment issue can I raise on this record? There's nothing to raise. So the motion to suppress was a guaranteed loser to start with? No, no, no. It was so poorly litigated that there's nothing I can say about it. The fact that he never showed standing, the fact that he didn't even explain why the— Does he even say which search warrants he's trying to suppress? Doesn't even—he utters the words, there is no probable cause. That's it. He doesn't say why. There's no appeal to be taken from that. But for counsel, we've seen lawyers do precisely that, and then still, on appeal, very good lawyers on appeal will say, well, you know, maybe it wasn't the best way to present it, but he raised enough—or maybe we're on point error because of the nature of those terrible— You know, as in the law, sometimes you make these distinctions. Is there enough to raise an argument? There is nothing here for me to raise. Let me give you another example. This Court recently decided in United v. Harry that poll cameras, right, that poll cameras was a matter of first impression in the circuit, that the use of poll cameras in that case did not violate the Fourth Amendment. Well, guess what? There were five poll cameras used in this case outside the residence of the defendant, the co-defendant. But Mr. Vaca never said a word about them, right? So I can't even make an—I can't raise an appeal on that. There's nothing. So these are just the things that we know are absent. But it's hard to see things that are not there. That's the point about the defective record. Thank you. All right. Thank you. Good afternoon, members of the Court. I'm Robert Marangola on behalf of the United States on this appeal, and I was trial counsel at this matter before Judge Terasi. At this trial, Carlos Figueroa did not—his lawyer did not abandon him. There was no actual conflict of interest that existed when they had disagreements, as almost all counsel and defendants do, especially during a hard-fought trial. This case, to borrow a phrase from Mr. Lee's brief, when it's shorn of the hyperbole, like the characterizations or opinions of the words like effectively and functionally and constructively and basically, this case boils down to a garden-variety, ineffective assistance claim that's dressed up to fit an abandonment argument or a conflict of interest argument to hopefully avoid the requirements of Strickland and the affirmative obligation they have to prove prejudice. And that's because there was nothing in the appellee's brief about the strength of the government's case here because the government's case, in addition to the many cooperators that testified against the defendant— What about your adversary's argument that part of what is at issue is that there's a deficient record here that doesn't enable for the kind of attack on it that you are sort of alluding to? Judge Lee, there were poll camera footage with respect to that issue that was just raised. There was lots of poll camera footage that was offered. There was foundation for that testimony that was offered at trial. That's in the record. Appellate counsel has that. They could have said this testimony was insufficient and the court shouldn't have allowed it in. They could have done that with numerous items of evidence. There were several hundred exhibits in this trial that were offered, including dozens of text messages, wiretap calls, firearms, cocaine, heroin, photographs. I know it's hard to kind of put you in the position of why don't you make your opponent's argument as to what the appeal issue should be. What about his claim that on the motion to suppress there was no way to challenge that because of standing? I mean, again, I don't want you to make your opponent's argument for him, but— Well, I guess if we're talking— Do you think that's an issue that the record was such that it could not be raised on appeal? Whether it could, he's raised it and asked this court to find ineffective assistance of counsel based on it, and I would submit that's his burden to establish, which he hasn't. And on this record, he hasn't established ineffective assistance of counsel, and that's part of why this court has the baseline aversion to deciding these ineffective assistance claims on direct review as opposed to on collateral review where there could have been a statement from the defendant. There could be the wiretap motions and affidavits submitted to the district court at first blush and then to this court to decide is there a meritorious motion to suppress here that should have been filed or not, and they haven't established that there is. So I would submit to the court that without establishing abandonment of a counsel who is objecting hundreds of times during the testimony of the cooperating witnesses in this case, made openings, closing, objected to the attribution of other murders to this defendant, that he certainly had not abandoned his client. And so I'd submit the Strickland analysis is what applies here, and that under that they cannot establish prejudice based on the overwhelming nature of the government's case against the defendant. And for that reason, this court should affirm in all respects and allow any ineffective assistance claim to be brought on collateral review through a 2255. What kinds of cases do fall under? Is it chronic? It is just spelled with an H, so it confuses me. What kinds of cases other than the classic sleeping lawyer? Is that sort of all that constitutes abandonment? Are you aware of other cases where we found abandonment? What's the threshold that you do need to reach? I understand the argument is we haven't gotten there, that disagreeing with your client about whether you returned his calls, refusing to call a witness, failing to file a sentencing memo, that the government's argument is that doesn't reach the level of abandonment. But when have we found abandonment? I'm not aware that this court, under circumstances such as this, has found abandonment. The Supreme Court I know in Florida v. Nixon described that phrase of functionally not an adversary. And they reversed, I think it was the 11th Circuit's finding, that there was a presumption of prejudice that should be applied. I'm not aware of- And this is probably not fair or helpful, but I'm just curious, and I preface this by saying I know this is not what we're deciding on appeal, but with regard to the initial brief that was filed for the appeal by Mr. Baca, would you have considered that something that would be closer to satisfying chronic if it had gone forward with that brief? Probably. I can't stand before this court and defend that, and I won't. So whether that would rise to the level of abandonment in terms of appellate counsel's performance, I don't know. But I would submit here that because there was nothing that they can point to at trial and everything that happened before that, that's why 90% of what they talk about in this appeal is that brief. And that without that, the court's left with a garden variety of ineffective assistance claim, which should be treated on collateral review. Unless the court has any further questions, I'll rest on my submission. All right. Thank you.  So, you know, what this court said in Tippins and what the Ninth Circuit said in those hostile lawyer cases, it said, you know, a lawyer who is occasionally asleep, you know, it accumulates, right? Eventually, the lawyer who is occasionally absent or asleep becomes a sleeping lawyer or an absent lawyer. So it's not, you know, there's not a clear line. But at some point, we're no longer in Strickland land, right? Strickland is about a lawyer who's basically functioning as a lawyer but makes mistakes, like me, okay? Like, I'm trying my best, and maybe I didn't raise the best arguments that I could have because I'm overlooked. We're all humans, right? But at some point, we go from Strickland to chronic and to this notion of effective and constructive abandonment. But don't you have to show us he's asleep at trial? Assuming he was asleep on the appeal, I know that's how you're characterizing our prior order. Don't you have to show he was asleep at trial? That's what asleep in the sense, yes. And what can you point to? That's what we have shown, Your Honor. We've shown that he was absent. The rule, the failure to make a Rule 29 motion, Your Honor, you know, I believe that most of, I think, all three of you were defense lawyers at some point. This is an unbelievable, egregious failure to file a motion to rid your client of a 15-year mandatory minimum sentence. This provision, the cocaine base itself would have warranted a 15-year sentence, right? And the judge tells him, oh, we all agree that this should be vacated, but you just need to file a motion. And Vaca says, okay. On Strickland terms, what's the prejudice on that? We're not making a Strickland argument. But it certainly shows this is an absent, this is a lawyer who's completely checked out. I mean, he doesn't even make the motion. He never makes the motion. And as the Court is aware, there's a 14-day deadline for Rule 29 motions, right? So if the government, so the government was very generous, and, in fact, it was Mr. Marangola, I think, that brought it up. It wasn't even Mr. Vaca that brought it up. It was at the end of the sentencing that Mr. Marangola brought it up. This is a lawyer who's completely asleep at the wheel, right? And so this is, and this idea that the appellate brief is so far off and so distant from his performance in the district court is just false. This is the post-trial motion, right, the stage right before, basically right before the appeal. And then look at the performance of sentencing, the stage right before the appeal. He's totally absent. He says nothing. How do you square that with the instances that you point to where the client says he's not calling me, I don't communicate with him enough, he didn't do this, he didn't do that, and the judge says, you know, ask the lawyer to respond, he responds. And on more than one occasion, the lawyer said, the trial judge says you have a good lawyer. I mean, if he was that egregious, you would think that the trial judge would have even admonished the lawyer, perhaps, or put some conditions, but we don't have that record. Your Honor, it's also, again, I don't want to speculate as to why judges do that, but I've been in places where judges do that, and there is kind of a, that's the thing you do when clients complain about their lawyers. And again, I would emphasize that this is, a judge made this comment that Mr. Varka was an excellent lawyer at a sentencing proceeding in which he did nothing. I'm looking at the transcript. He's got some objections to the PSR. I mean, there is discussion here. It's not nothing. I guess I, well, we're over time, but I would just say, counsel, that hyperbole here is not helping us focus on your argument. I apologize if I'm engaging in hyperbole, Your Honor. Well, he didn't do nothing. Okay, so his entire argument in mitigation is at page, at the bottom of 342 to 43, okay? That's not pages I have, so I don't know. It's the second volume of my appendix. Oh, your appendix, okay. But this is after Mr. Maringola, you know, asked for a life sentence, okay, says that he's killed multiple people and so on. And that all that Mr. Varka says is, well, what's on the table here is whether he should get a life sentence or less than life, and the court has discretion to give less than life. And you can see that there's law enforcement people here, as well as family. And I would ask the court not to sentence to life, but to give any sentence that doesn't exceed 20 years. That's all he says. Nothing. There's no mitigation whatsoever. There's no mitigation in writing. There's no mitigation in, and nonetheless, the court said you did a terrific job. And so, again, and to get back to Judge Maring's point about the only argument that we see. Is there any argument prior to that about him? Any presentation? No, nothing. Varka says nothing. Varka says much more. In fact, most of his words at the sentencing are expended to call his client a liar. When his client said that, oh, I was never interviewed by the PSR, the probation office, and I wanted to. And Varka, once again, goes into detail about, no, no, no, I talked to him about it and he's just lying. Basically, in effect, he's saying my client is lying again. He spends more time talking about his client. He's lying. He contradicted his client's representation.  I'm engaging in a hyperbole again. Yeah, but when you engage in a hyperbole, it's hard for us to tell what's in the record and what's not. I apologize, but I believe that when you directly contradict your client and specifically explain why what he's saying is false, that's really saying that he's lying. But this is also the sentencing which. Mr. Varka, because I've stood at counsel table and had that question asked of me. If the judge says, Mr. Varka, your client says he asked you to be interviewed for the PSR and he wasn't, what should Mr. Varka have said? There's a whole bunch of things you can say, Your Honor. And again, yes, you're right. You can say, Your Honor, well, first of all, if I were there, I would say, let me speak with my client off the record. And if we have this heated disagreement about it, I would just say to the court, Your Honor, I think we have a misunderstanding about this. That's all I would say. The idea that he buried the knife, Your Honor. Instead of just, oh, I'm sorry, I'm engaging in a hyperbole. But instead of just letting, you know, being quiet about it and saying, okay, we may have a misunderstanding or something else, he basically calls his client a liar. And that he spends more time doing that than trying to convince the court that this is a person who, despite his murder conviction, may warrant something less than a life sentence. That he deserves not to die in prison. He says nothing about that. All right. I think we have your argument. Thank you. Thank you. Thank you both for your arguments. We will take the case under advisement. And with that, I think we are adjourned.